Thank you, Your Honor. May it please the Court. We're asking this Court to vacate the summary judgment rendered in favor of the Town of Maringouin and to remand those claims for further proceedings. This is a First Amendment retaliation case, at least that's what it is in the posture now. It's very, very much like the Lozman case. That's what we briefed almost exclusively. It's not distinguishable in any meaningful way, and the only differences between this case and Lozman don't favor summary judgment. In the Lozman court, the Supreme Court rejected the same arguments that the Town is making in this case. It rejected the framework that the Town is saying should be employed in this case. It rejected the notion that probable cause must exist for a First Amendment retaliation case. That is not the law. That's certainly not what Lozman said. Lozman said the First Amendment is not a bar to a First Amendment retaliation claim under the set of facts in its case, which are, I don't think they're literally unique, they're nearly unique, and this case falls within the same concerns and factors as were present in Lozman. Also, in Lozman, I mean, I tend to agree with you that the only way you're going to get the summary judgment reversed here is to situate your case in Lozman, because I assume that you're going to concede that there was probable cause for the arrest based on the private, the affidavits of the private persons. We certainly concede that for this case. There are other state law claims that may be pursued in state court. I don't concede it for that purpose, but for everything that's happening in this court, we do concede that. Right, so that's why I say you're going to have to come within Lozman. So in Lozman, there was a, quote, official municipal policy of intimidation against this guy, and there was evidence of it in the, in the council meeting or whatever it was. So where is that here? Where is such evidence here? That's where there's a difference. It's not a way to distinguish it. That was disputed in Lozman, whether that was decided at the council meeting or they just said, well, let's vigorously defend what Lozman's suing us for, this open meetings lawsuit. In this case . . . People were saying in that case, I understand Lozman, let's get this guy. Yes, that's what Lozman said. And certainly by the time it got to the Supreme Court, they said, well, we're going to assume that there was this official policy to go, to retaliate against Lozman. In this case, there is action by the policymaker, Chief Hosea Anderson, who is the, found by the district court, conceded by the town, is the chief law enforcement policymaker for Merriman. So whether there is a custom or an official policy, this is action by the policymaker himself. He's an actor in this case, which is pretty rare. You don't have a sheriff who's committing an arrest or doing this. It's usually a deputy. It's an officer. It's not the chief. This is the policymaker doing it. So . . . When the policymaker is the victim, I think, I'm wondering if that's not a little more complex. Well, I . . . In other words, if he had arrested Ms. Payton for smashing out the window on his car, would that be, would that be, quote, retaliatory because he's the chief? I suppose someone, not me, would make that argument that it could be. Smashing the window out of a car is something that's, it's not protected speech. I suppose someone could say, well, I'm, that's just, I'm, I'm demonstrating my, my disgust with the chief. Well, it's also smashing the window out of a car and destroying property and, and who knows what else. So it, it, as a academic exercise, it could be retaliatory and, and when it comes down to cases, I don't, it probably won't be any more than arresting her for bank robbery would be. In this case, the, to the extent that the chief is a victim, he's supposedly a victim of defamation. The defamation is all about protected speech. He's not doing his job. He's protecting criminals. He's, he's not arresting criminals. He's allowing me to be harassed. When this person, Duane Bourgeois, says he's threatened to shoot me in the face, the chief doesn't do anything about it. He doesn't get an arrest warrant. He doesn't even investigate it according to his own, his own testimony. What does that have to do with Ms. Payton? Well, Ms. Payton made complaints about Bourgeois and others in town and that didn't go anywhere. What the chief did, he sent deputies to her house to say, well, a lot of people in town really don't like you. They want to attack you. Well, that, that sort of dovetails with our argument when we get to, to Mount Healthy is just because someone makes a complaint doesn't mean that complaint is going to get acted on. Certainly, in Ms. Payton's case, it doesn't. She's complaining about actual crimes, the threat to shoot her in the face. The chief doesn't do anything and that's what she's complaining to the chief about. He's protecting people who are the in crowd in Maringouin. She's not from Maringouin and the chief does nothing when these people are committing crimes or arguably committing crimes. When these trucks that she believes are based on the placards are parked near the railroad tracks near her house with hazardous conditions that could presumably explode if a train hits it or something. Nobody cares. So, those things may be legitimate complaints. They may be an overreaction. They may be something else. But when Ms. Payton complains, nothing happens. When the favored group complains, she gets arrested. So, in terms of, back to Loisman, the probable cause that I'm conceding, as Judge Duncan pointed out, is based on not even probable cause but arguable probable cause that Ms. Payton by this letter defamed these three truck drivers. There is no probable cause and no one is, certainly not the district court, said there was probable cause that Ms. Payton defamed the chief of police because she didn't. As a matter of fact, she could not as a matter of law because the criminal defamation statute has been held unconstitutional for decades. What Merrigan wants to cite or has cited Hartman for the proposition that you have to show an absence of probable cause for the arrest. That's exactly what Loisman rejected. They said we're not going to apply Hartman under this circumstance. We're going to apply Mount Healthy, which is sort of a burden shifting thing. There is no probable cause that Ms. Payton arrested or defamed the chief of police. There is, we concede, arguable probable cause that she, this letter was defamatory as to these non-state actors. But the question then is, was there probable cause for the arrest in the absence of what we say was retaliatory? Loisman said you look to the Mount Healthy standard to say probable cause when there's evidence of retaliation and there is here because the chief in his own deposition testimony said I didn't even have the letter when I made the complaint. I didn't, my complaint wasn't really about this letter even though I swore out this complaint saying she defamed me in this letter. She posted this YouTube video. She's talking mean about me. She put a sign on her house saying Hosea Anderson doesn't do his job and lets people run wild in Merrigan. That's what I didn't like. So that's not probable cause. He wants to piggyback on the probable cause of the others. And then the question, if you follow Loisman to say probable cause doesn't end the inquiry, you look to Mount Healthy and that's the defendant's burden. The defendant needs to be able to say, well, she would have been arrested even without the retaliatory animus and proof of that. And again, proof on the summary judgment posture is evidence of it because all the facts are construed in favor of Ms. Payton, the non-movement, the reasonable inferences are drawn in her favor. It's certainly conceded there is no probable cause as to the chief. It's arguable as to the others and would under Mount Healthy, by way of Loisman, would she have been arrested anyway for defamation? Well, then you need to say, because this was not the case of a patrolman saw her defaming someone and arrested her. No, she's writing to their boss and trying to get them all fired. Well, she's certainly probably trying to get them fired, certainly trying to get the trucks not parked there. She's saying she's calling them out. Absolutely. What she's saying about Hosea Anderson, the chief in that letter, is that he's doing nothing. She's not defaming him at all. But yes, she's writing a letter. And to the extent that that's probable cause, the question is, would that have resulted in people being gang members? Oh, absolutely. So, I mean, that's a little bit more than arguable probable cause, it seems to me, because you're accusing them of being lawbreakers, falsely, as well as trying to get them all fired. The district court never got to falsely. It got to its arguable probable cause. They say it was false. And frankly, that's why we stripped down to the peel, to the marrow of what we have here. So as not to get into all of that, to not to deal with qualified immunity. This isn't the tense, uncertain, rapidly evolving situation. I saw her defame somebody, let me arrest her. Maybe that was wrong. Maybe it was right. But it's reasonable. You know, we talk about, or I've read about John F. Kennedy and the Massachusetts mafia. So, you know, a lot of these terms can be used hyperbolically, can be used as a rhetorical device, but we don't need to get into any of that in this case. The question becomes, if probable cause does not end the case, the retaliation case, the question is Mount Healthy. And Mount Healthy puts the burden on the defendants. Judge DiGrago didn't give the defendants any burden to satisfy in this case. He dismissed the state law claims, including the state malicious prosecution claim, because he recognizes a different burden. In Louisiana, if a claim is dismissed before trial, there's a presumption of no probable cause. The defense then bears the burden. The judge said, I'm not going to keep these state law claims and get into that issue. Go file them in state court if you want. Well, he didn't get into any kind of burden that the defendants might have. The defendants, therefore, have a burden of saying she would have been arrested even despite any retaliatory animus by Chief Anderson. And Chief Anderson's own testimony establishes his animus, that this wasn't about a letter. It was about she's complaining about him and she's talking mean about me, he says. And then the arrest, again, is would an arrest warrant have issued? We know an arrest warrant had issued this case because Chief Anderson goes to the justice of the peace with these other three men saying, we've all been defamed by this letter. His testimony is that it wasn't even about the letter. But that complaint has got the imprimatur of the town of Merrigan. It's got the chief police officer of Merrigan saying, justice of the peace, issue a warrant to arrest this lady because she defamed all of us. So the question is not whether she just would have been arrested. The question is whether there would have been a warrant issued giving rise to the arrest. Because as a practical matter, that's the only way she was going to get arrested for defaming somebody. So are you suggesting that whenever the chief of police arrests somebody, that that is an action that subjects a municipality to liability? If he is the policymaker, it's an action that might do that. That depends on the facts of the case. If it's... What is it that makes it an act of the town here? It's an act of the town first because they conceded he's the chief policymaker. He binds the town. Anderson, in his official capacity, is the town of Merrigan. That's why we preserve those claims and dismiss the individual capacity claim against him. Well, supposing he had gotten a deputy to swear out these, or to effectuate the arrest warrant, that would not have been an action of the town? That would have been an action of the town because he's the complainant. He's the complaining witness in that case. He's the one saying I was defamed when the law says you can't be defamed. Well, again, I'm saying, well, it's not that the law says you can't be defamed as I understood it, although I thought this was getting into the merits and I didn't go into it thoroughly. The law is unconstitutional insofar as it doesn't have New York Times v. Sullivan expressly incorporated, right? Yes. And therefore, had the chief asserted and been able to prove malice or reckless disregard, it would not have been an invalid complaint. Is that right? I don't think that's right, Your Honor, because the Louisiana Supreme Court said it doesn't include that and therefore it's invalid and unenforceable. It's unconstitutional because the Louisiana legislature never incorporated that standard into it. So perhaps it could have been amended, but it never was. Courts can make narrowing constructions of laws like this and make them consistent with the First Amendment, in my understanding. Well, that's something that the U.S. Supreme Court in Garrison declined to do and that the Louisiana Supreme Court in State v. Snyder declined to do, is that we're not going to narrow it, let the legislature narrow it. The legislature never did, so it's a dead letter and has been for 50 years. But if the defendant's claim is that this warrant for arrest for defamation would have issued, whether it had the imprimatur of the chief's complaint, of the town's complaint, that would have been the case anyway, well, where's the evidence of that? They can come forward with evidence, we say, on remand, because then that becomes their burden. But that's not something that's established in this case. The Justice of the Peace hasn't testified, they didn't call in to say, well, I would have issued this warrant regardless, that there's no evidence of that. So if we're going to follow Lozeman and say the probable cause of the inquiry doesn't end it, it just means, would it have happened anyway, a la Hartman and Mount Healthy? The question is, what's the evidence that it would have happened anyway? And that's not Ms. Payton's burden on summary judgment, that's the defendant's burden. That's not a burden they've met. Maybe they can meet it in the district court again, but it's certainly not supported by the summary judgment record, and that's why we ask for these claims to be vacated, the judgment as to these claims. Thank you, Your Honor. All right. We have time for rebuttal. Mr. Thomas. Good morning, Your Honor. May it please the Court. I'm Scott Thomas here on behalf of the town of Maringwin. Simply stated, we believe Payton failed to meet her burden to overcome the motion for summary judgment because, under the Hartman things that we've already discussed, we believe that Ms. Payton is mistakenly relying on the Lozeman case to say that probable cause is irrelevant for the First Amendment retaliatory arrest. I don't think Lozeman says that. I think Lozeman is very specific as to the specific, you know, set of facts that existed in that case. And in that case, there was a city councilman in a, you know, in a city council meeting, she's ... Lozeman is causing a disruption. In the disruption, after it happens over a series of time, the councilman points to, you know, the officer in question and asks that Lozeman be arrested. That's an action by the councilman forcing for the arrest. In this case, it's a completely different circumstance. Four individuals went and gave oral and written statements to the Justice of the Peace. Upon reviewing the statements, both written and oral, from the chief, admittedly, and the three individual people decided that an arrest warrant should be issued. So here, an independent third party is the one that, you know, made the determination that the arrest should happen. It's not the city councilman. It's a Justice of the Peace upon being presented with information. To something Judge Jones said, although I agree that there was no legislative action over the subsequent years as to the statute for the state of Louisiana, we argued in brief in the initial stages of the motion to dismiss that we didn't feel like it was unconstitutional for all purposes, that we believe that if you have to, with the possibility of malice, et cetera, that the chief had a right to make a claim for defamation, and that's what the chief thought he had, rightfully or wrongfully, that's what he thought he had at the time. But irrelevant to that is the fact that the Justice of the Peace still looked at and heard the statements of those other three individuals, decided to, that a probable cause warrant should be done, and the arrest warrant was done as a result of that. So, we believe that that holding, in and of itself, was limited to that specific set of facts, and that Hartman does, in fact, apply. And what we're arguing is that she didn't overcome that threshold in that circumstance. But even if you get back to the Mount Healthy thing, Mount Healthy still says you have to show that the defendant is able to show the same adverse action would take place without the alleged retaliatory effect. Clayton failed to establish the act of curtailment in this case. There's no evidence to show that after this happened, she was prevented from having any discussions about the chief. There's nothing to show that she was prevented or damaged in any way from the actions that once the arrest was made. She said she lost sleep, that she lost her reputation, physical illness, fear of future interference, but all of that's insufficient to show that she was curtailed from her speech. And that's a necessary component under Mount Healthy. What's your case saying that you have to be chilled or curtailed in your speech? Well, I think this court in Keenan v. Tejada said that, 295 F. 3rd, 252, I think Villareal v. the City of Laredo, which is 17th F. But 1983 allows other kinds of damages, right? It does, but I think that these cases stand for the point or posture that in this set of circumstance for this type of claim, her damage has to be, or one of the things has to be, that there's a curtailment of freedom of speech. That's what we're here about. That's what she's alleging occurred in this circumstance. I mean, we have retaliation cases periodically from employees who are fired for voicing their complaints about this, that, and the other. And I just don't recall seeing the defense before that there was no ongoing curtailment because they were terminated or they were, you know, sanctioned in some way. But anyway, I'll take your word for it. OK, Your Honor. Basically, Your Honor, even given that, in the alternative, if she had come forward with something, we still maintain that the ultimate result was probable cause existed in this case. Probable cause was established when the justice of the peace reviewed the oral and written statements. I thought it was conceded for purposes of this appeal that there was probable cause for the arrest. Correct. And probable cause is something that she has to show didn't exist for purposes of defeating our summary judgment. And our point or our position is she hasn't done that. And that's only if she, as I understand the argument, only if she comes within the Lausman case. Correct. And I don't think the Lausman case, I think the specific facts of the Lausman case were specific to that case and the Supreme Court remanded it back to the, remanded it back to go look as to whether all the other methods and burdens had been done. It was simply city councilman ordering officer to make the arrest and that's not what we have here. And then, Your Honor, I know I've got a lot of time left and I don't, unless there's other questions, the only other thing I would say is there's arguably a Fourth Amendment claim. It wasn't really made in the statement of the issues or within the text of the brief. So we would say that that has essentially been abandoned and there's no need to discuss that any further. But unless Your Honors have further questions, that's basically the crux of our argument. We never object to brevity. Thank you, Your Honor.  Okay. Mr. Laughlin. Thank you, Your Honor. In terms of Hartman, almost every line of the Lozman case guides this case, we say, and Hartman is something that the court declined to apply under this scenario. In terms of the status of the statute, whether there's a limiting construction, what the chief reasonably good faith may have thought, those aren't the issues on appeal now. What he thought and I have good faith to think is a qualified immunity argument. That's not before the court now, it's deliberately so. In terms of the policymaker and the distinction, the factual distinction between Lozman and this case, the city council, the allegation in Lozman is that the city council decided on a retaliatory policy. They're the official policymaker and they agreed with this policy according to Lozman. In this case, the official policymaker for the town is the chief and he made a decision to retaliate against Payton. There's ample evidence of that. There is his own testimony. This wasn't, my complaint wasn't even about the letter, even though he signs a sworn affidavit, a voluntary statement saying it is about the letter. It's because of this YouTube video. It's because she's speaking mean about me and hanging signs on her door. So just like Lozman, you have an official policymaker and just like Lozman, you have somebody who's making, that person, group of people in Lozman, single chief of police in this case, making a decision to retaliate. There's evidence supporting both. It's not conclusively established the jury's going to agree or disagree. It was a 19-day jury trial in Lozman. In the Keenan case, which I think was your case, Judge Jones, the court reversed a summary judgment. It's years ago. But about objective chill and the actual injury she has to show, Ms. Payton has to show, that's all in the record, but it's not something that the court, that the district court ruled on in this case. That's something that can be visited on remand, but I don't think that this court in the first instance should decide something like that, where we have, this is, the primary focus is the objective chill. And when you call out the chief of police, and when you say he's not doing his job, and that's further supported by evidence to where a known criminal is threatened to shoot this lady in the face and he doesn't do anything, and you get thrown in a cage as a result, that's objectively chilling of a person of ordinary firmness, which is what the standard is. Lastly, in terms of probable cause, it's not just a question of, when we get into Mount Healthy, whether there was probable cause or not. Just like Lozman, we've conceded at this juncture probable cause. It's whether she would have been arrested anyway, and probable cause doesn't result in an arrest just in the abstract. It might have resulted in an arrest warrant issued, being issued, which resulted in the arrest. But the question is, is there going to be a warrant? Because again, she's not just arrested because somebody, some officer sees her defame someone. It's because four men, one of whom is the chief of police, go to the justice of the peace and say, arrest this lady because she defamed us in a letter. Give us a warrant. And he does so. There's no evidence by him about breaking the chain and his independent anything else, but there is, we know to a certainty, that the chief of police of the town of Merrigan is one of the people who said, she defamed me. So under that circumstance, a warrant issued and she got arrested. In the absence of that, because there is no probable cause, you know, probable cause is conceded both ways. We conceded it for purposes of this appeal. They have to concede that there is no probable cause as to the chief. Would this warrant have issued had the chief of police not been there? Whether this complaint, these four men's complaint, which are all there at the same time, based supposedly on the same letter, had the imprimatur of the chief of police saying, I want this We say no. We say a reasonable jury could say no. And therefore, we ask the case be vacated for that reason and the others. Thank you, Your Honor. Okay. Thank you very much. Court will stand in recess until 9 o'clock tomorrow morning. Thank you.